United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SHADE CONSTRUCTION & ENGINEERING, INC., *et al.*,<br><br>Defendants.<br>_____/ | No. C-06-6830 PJH (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**Docket No. 18** |

Plaintiffs are fiduciaries for the following trust funds: the Laborers Health and Welfare Trust Fund for Northern California; the Laborers Vacation-Holiday Trust Fund for Northern California; the Laborers Pension Trust Fund for Northern California; and the Laborers Training and Retraining Trust Fund for Northern California. The trust funds are all employee benefit plans. Plaintiffs originally filed suit, on behalf of the trust funds, against Defendants Shade Construction & Engineering Inc. ("Shade Construction"), a corporation, and against Scott Shade, an individual, pursuant to the National Labor Relations Act, *see* 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1132. Upon further investigation, Plaintiffs have discovered that the individual Scott Shade is not the a fiduciary in this case; thus, the Court

recommends dismissal of Scott Shade as a Defendant.[1] *See* Proposed Order of Dismissal.  After Defendant failed to respond to Plaintiffs' complaint, default was entered on April 4, 2007.  *See* Docket No. 14.  Plaintiffs thereafter moved for default judgment.

Having considered Plaintiffs' brief and accompanying submissions, as well as all other evidence of record, the Court hereby recommends that the motion for default judgment be **GRANTED** against Shade Construction.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed suit against Shade Construction and Mr. Shade on November 2, 2006.  *See* Docket No. 1.  However, upon further investigation, Plaintiffs have discovered that Mr. Scott Shade does not have fiduciary duty.  Thus, Plaintiffs have asked that Mr. Scott Shade be dismissed from this case.  *See* Plaintiffs' Supplemental Briefing and Request for Dismissal Without Prejudice of Defendant Scott Michael Shade.

According to the complaint, Shade Construction "fail[ed] to pay and satisfy their delinquencies to the Trust Funds [at issue]" and further "fail[ed] to make contributions in a timely manner," Compl. ¶ 12, as required by the Memorandum Agreement entered into between Shade Construction and the Northern California District Council of Laborers.  *See id.* ¶¶ 9-10 (referring to the Memorandum Agreement entered into by the parties, pursuant to which Shade Construction agreed to be bound by the Master Agreement and the Trust Agreements for the trust funds at issue). Plaintiffs contend that Shade Construction is liable for the ERISA violation.

After Defendants failed to respond to the complaint, Plaintiffs requested entry of default, which was entered on April 4, 2007.  *See* Docket No. 14.  Thereafter, Plaintiffs filed the pending motion for default judgment.  In their motion, Plaintiffs ask for (1) damages in the amount of $67,024.50, plus additional interest and associated liquidated damages accruing at the rate of 1.5% per month until paid; (2) a mandatory injunction ordering defendants to permit auditors to come onto its premises and to submit to an audit of its financial records for the period from January 1, 2003

---

[1] Plaintiffs do not seek to amend their complaint to include Mr. Art Shade, who is the fiduciary in this case.  *See* Proposed Order of Dismissal.  Scott Shade is still assumed to be the Chief Executive Officer of Shade Construction.

1  through April 30, 2007; and (3) an award of attorney's fees and costs in the amount of $6,290.75.
2  Plaintiffs also ask that the Court reserve jurisdiction to enforce the mandatory injunction and to
3  entertain a further damages award should the audit disclose additional amounts owed by Defendants.

## II.   DISCUSSION

A.   Adequacy of Service of Process

The Court finds that service upon Shade Construction was appropriate.  Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "in the manner prescribed for individuals by [Rule 4](e)(1)."  Fed. R. Civ. P. 4(h)(1).  Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located, or in which service is effected."  Fed. R. Civ. P. 4(e)(1).  The proof of service reflects that the summons and complaint were served on Shade Corporation by substitute service under California law.

Section 415.20(a) permits substitute service on a corporation as follows:

> In lieu of personal delivery of a copy of the summons and of the complaint to the person to be served as specified in Section 416.10 [governing service on a corporation] . . . , a summons may be served by leaving a copy of the summons and of the complaint during usual office hours in his or her office with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left.

Cal. Code Civ. Proc. § 415.20(a).  Plaintiffs have provided adequate evidence that they complied with the requirements § 415.20(a).

Under § 416.10, a summons may be served on a corporation by delivering a copy of the summons and complaint to its president or other head of the corporation.  *See id.* § 416.10(ab). Plaintiffs have submitted evidence that Mr. Scott Shade is the CEO and president of Shade Corporation.  *See* Richman Decl., Ex. A, at 3.  Although Plaintiffs currently seek to dismiss Mr. Scott Shade from this motion, Plaintiffs originally filed their motion for default judgment against both Shade Construction and Mr. Scott Shade.  The proof of service reflects that the summons and complaint were left with a person apparently in charge of Shade Construction.  *See* Docket No. 5. The proof of service also reflects that the documents were thereafter mailed (first class, postage prepaid).  *See id.*  While the proof of service does not state that the documents were mailed

specifically to Mr. Shade as president, *cf. Dill v. Berquist Constr. Co., Inc.*, 24 Cal. App. 4th 1426, 1436 (1994) (finding that the plaintiff did not strictly comply with California Code of Civil Procedure § 415.40 because he "did not mail the summons to any individual at all, but rather to the corporate defendants themselves"), this does not render service defective under the circumstances. The proof of service for Mr. Shade *as an individual* reflects that the summons and complaint were mailed to him at Shade Corporation. *See* Docket No. 6. Because the summons and complaint specifically named Shade Corporation as a defendant, Mr. Shade had notice that Shade Corporation was being sued. *Cf. id.* at 1437 (finding that there would be substantial compliance with § 415.40 "if, despite [the plaintiff's] failure to address the mail to one of the persons to be served on behalf of the defendants, the summons was actually received by one of the persons to be served").

B.  Merits of Motion for Default Judgment

The decision as to whether a default judgment is warranted is a discretionary one, *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), and factors that a court considers in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must take as true all factual allegations in Plaintiffs' complaint except for those related to the amount of damages. *See Televideo Sys., Inc.*, 826 F.2d at 917-18.

The majority of the *Eitel* factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Plaintiffs would likely be without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Notably,

4

Plaintiffs demanded Shade Construction to allow an inspection of its books and records, *see* Compl. ¶ 28, but apparently, Shade Construction did not respond. Also, the sum of money at stake in the action is appropriate as it is tailored to the specific misconduct of Shade Construction. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because Shade Construction has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Further, there is no indication that Shade Construction's default was due to excusable neglect.

The only factors that deserve closer analysis are the second and third factors -- *i.e.*, the merits of the Plaintiffs' substantive claim and the sufficiency of the complaint.

Plaintiffs have provided evidence that Shade Construction entered into a Memorandum Agreement with the Northern California District Council of Laborers. *See* Hagan Decl., Ex. F (Memorandum Agreement). The Memorandum Agreement, which incorporates by reference a Master Agreement, states that the "individual employer agrees to pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement." *Id.*; *see also id.*, Ex. G (Master Agreement § 28A) (declaring that "each Individual Employer shall pay hourly contributions for each hour paid for and/or worked"). The Master Agreement in turn incorporates the Trust Agreements for the trust funds at issue, *see id.* (Master Agreement § 28A) (providing that "[e]ach Individual Employer shall be subject to and entitled to the benefits of all of the provisions of the Trust Agreements"), which also provide for the payment of contributions. *See id.*, Ex. B (representative Trust Agreement) (providing for creation of the trust fund, which "shall consist of all Contributions required by Collective Bargaining Agreements").

The Trust Agreements further provide that, "[u]pon request in writing from the Board, any Individual Employer will permit a certified public accountant selected by the Board to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or report of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund." *Id.*, Ex. E (representative Trust Agreement).

5

Plaintiffs' complaint alleges, and the Court must accept as true, *see Televideo Sys., Inc.*, 826 F.2d at 917, that Shade Construction "fail[ed] to pay and satisfy [its] delinquen[t] [contributions] to the Trust Funds" and "fail[ed] to make contributions in a timely manner," as required by the agreements described above. Compl. ¶ 12. Thus, Plaintiffs have successfully stated a claim for relief under ERISA. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement:); *id*. § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

The complaint further alleges that Shade Construction failed to allow Plaintiffs to conduct an audit, as required by the same agreements. *See* Compl. ¶ 28. "Where a Fund's trust documents, to which an employer has bound itself, specifically provide that Fund trustees can examine any of the employer's records, an employer must comply with such agreed upon obligations." *Engineers Joint Welfare, Pension, Supplemental Unemployment Benefit & Training Funds v. BDR, Inc.*, No. 05-CV 1385 (NAM/GHL), 2006 U.S. Dist. LEXIS 70967, at *9 (N.D.N.Y. Sept. 29, 2006); *see also Central States, Southeast & Southwest Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985) (in action in which employee benefit plans asked for court order permitting their auditors to conduct an audit of employers, concluding that the audit requested was "well within the authority of the trustees as outlined in the trust documents"). Thus, again, Plaintiffs have successfully stated a claim for relief.

For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment against Shade Construction be granted.

C.      Damages and Other Relief Against Shade Construction

Because the Court concludes that default judgment against Shade Construction is warranted, it must determine what damages or other relief is appropriate. Plaintiffs have the burden of "proving up" their damages or the need for other requested relief. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005)

6

("Plaintiff has the burden of proving damages through testimony or written affidavit."). Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 29 U.S.C. § 1132(g)(2).

Consistent with their complaint, Plaintiffs ask in their motion for default judgment for an injunction requiring Shade Construction to submit to an audit of its books and records for the period January 1, 2003, through April 2007. Plaintiffs also seek to recover all outstanding contributions due and owing, interest and liquidated damages, and attorney's fees and costs.

1.  Injunction

Plaintiffs ask first for an injunction directing Shade Construction to submit to an audit of its financial records for the period January 1, 2003 through April 2007. In light of the agreements described above and the Supreme Court's *Central States* opinion, the Court recommends that this relief be granted. That is, Shade Construction should be required to "permit a certified public accountant selected by the Board to enter upon [its] premises . . . during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or report of [Shade Construction] as may be necessary to determine whether [Shade Construction] is making full and prompt payment of all sums required to be paid by . . . it to the Fund[s] [at issue]." Hagan Decl., Ex. E (representative Trust Agreement). Such relief would also be appropriate under ERISA to the extent the audit is tailored to the purpose of verifying that required contributions have been paid. *See International Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 31 (D.D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate [under 29 U.S.C. § 1132(g)(2)(E)]. This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.").

The Court further recommends that the presiding judge retain jurisdiction over this case with regard to any contributions and damages determined to be owed to the trust funds after the audit has

been completed and the monthly contribution reports provided. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *11-12 (N.D. Cal. Apr. 15, 2004) ("This Court retains jurisdiction over this case with regard to contributions and damages determined owed to plaintiffs during the audit."); *Carpenters 46 Northern Cal. Counties Conference Bd. v. San Jose Woodworking, Inc.*, No. C00-4690 TEH, 2001 WL 1671056 (N.D. Cal. Aug. 14, 2001) ("This Court shall retain jurisdiction of this matter to enforce the Order compelling an audit and payment of all amounts found due and owing.").

2.      <u>Contributions: Reported/Not Paid and Paid/Paid Late</u>

Plaintiffs seek damages with respect to two kinds of contributions: (1) those that were reported but never paid in full, *see* Hagan Decl., Ex. J (reported/unpaid), and (2) those that were paid in full but paid late. *See id.*, Ex. K (paid/paid late). More specifically:

- From May 2003 to December 2006, contributions were paid in full but paid late. *See id*, Ex. K. Plaintiffs seeks interest and liquidated damages.
- From January to March 2007, contributions were reported but unpaid. *See id.*, Ex J. Plaintiffs seek the outstanding unpaid contributions and "double interest" on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(B)-(C) (providing for (B) interest on the unpaid contributions and (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan).

The Court recommends that Plaintiffs be awarded the monetary damages sought.

a.      <u>Reported/Unpaid</u>

Plaintiffs have provided documentation supporting their claims that there were contributions reported but unpaid from January to March 2007. *See* Hagan Decl., Exs. H-I (contribution reports). In particular, Plaintiffs have identified the names of employees, number of hours worked, and the applicable rates for each trust as determined by the Master Agreement in order calculate the total contributions that were reported but not paid between January 2007 and March 2007. *See id.*, Exs. H-I. The total amount of contributions reported but not paid is $40,327.73.

Under terms of the Master Agreement, the proper interest rate is "one and one-half percent (1.5%) per month until receipt of payment" and the proper liquidated damages amount is "at a flat

1 rate of one hundred and fifty dollars ($150.00) per month." *Id.,* Ex. G (Master Agreement, ¶ 17, §
2 28A). Plaintiffs seek "double" interest according to 29 U.S.C. § 1132(g)(2)(B)-(C), since (B)
3 provides for "interest on the unpaid contributions" while (C) additionally provides for "an amount
4 equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages" as specified
5 by the plan. 29 U.S.C. § 1132(g)(2)(B)-(C).

Interest has been calculated as accrued interest from the day the delinquent contribution started to accrue interest up to April 25, 2007.[2] For example, the January 2007 contributions were due by February 25, 2007. The interest has accrued for the two-month period from February 25, 2007 to April 25, 2007. In order to calculate interest for the two-month accrual period for the January 2007 contributions, Plaintiffs multiply the total number of hours worked during January 2007, as stated in the Contribution reports totaling 1,144.5 hours, by the rate for each Trust, as determined under the terms of the Master Agreement. *See* Hagan Decl., Ex. J. This amount reveals the total contributions due to each trust:

[TRUST: Hours Worked During the Month x Rate in Master Agreement = Contribution]

Vacation-Holiday: 1,144.5 x $2.28 = $2,609.46
Pension: 1,144.5 x $3.26 = $3,731.07
Health & Welfare: 1,144.5 x $5.44 = $6,226.08
Training: 1,144.5 x $0.34 = $389.13
Annuity: 1,144.5 x $1.01 = $1,155.96

Since nothing was paid to any of the Trusts during the January 2007 to March 2007 period, interest for January 2007 contributions was calculated for two months at the contract-determined rate of 1.5% for each of the trusts:

[TRUST: Contribution Total (From above) x Rate of 1.5% x # months late = INTEREST]

Vacation-Holiday: $2,609.46 x .015 x 2 = $78.28
Pension: $3,731.07 x .015 x 2 = $111.92
Health & Welfare: $6,226.08 x .015 x 2 = $186.78
Training: $389.13 x .015 x 2 = $11.66
Annuity: $1155.96 x .015 x 2 = $34.66

TOTAL Interest for January 2007 Unpaid Contributions: $423.30

---

[2] Plaintiffs have calculated the damages for unpaid contributions up to March 2007. April 25, 2007 is the date in which the March 2007 contributions were due since contributions are due "by the 25th day of the month following the month in which the hours were worked." Hagan Decl., ¶ 7.

9

The same process was performed for each unpaid period, with variances corresponding with the accrual period up to April 25, 2007. The total amount of accrued interest for the period between January 2007 to March 2007 of unpaid contributions is $601.66.

In this case, Plaintiffs are entitled to unpaid contributions under 29 U.S.C. § 1132(g)(2)(A) in the amount of $40,327.73. Under 29 U.S.C. 1132(g)(2)(B), Plaintiffs are entitled to an interest rate of 1.5% as determined by the Master Agreement, *see* Hagan Decl., Ex. G, equaling $601.66. The interest is calculated through April 25, 2007. According to 29 U.S.C. 1132(g)(2)(C), Plaintiffs are also entitled to the greater amount between interest or liquidated damages; hence, Plaintiffs are entitled to "double interest" since the interest amount of $601.66 is greater than the liquidated damages amount of $450.00, as calculated by the Master Agreement rate of $150.00 per month for 3 months. Therefore, Plaintiffs' request of the unpaid contribution and "double interest" should be granted in the total amount of $41,531.05.

### b. Paid/Paid Late

Plaintiffs have also provided documentation supporting their claims that there were contributions paid in full but paid late. *See* Hagan Decl., Ex. K (contribution reports). In particular, Plaintiffs have submitted accounting batch histories that record the date of late payments. *See id.* As Plaintiffs contend, under the terms of the Master Agreement, "delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment" and liquidated damages "at a flat rate of one hundred and fifty dollars ($150.00) per month." *Id.*, Ex. G (Master Agreement, ¶ 17, § 28A).

Plaintiffs are not entitled to a statutory award of interest or liquidated damages because remedies under 29 U.S.C. § 1132(g)(2) only apply to unpaid contributions. However, for the already paid but paid late contributions, Plaintiffs may be entitled to liquidated damages and interest as a matter of contract. *See Idaho Plumbers v. United Mechanical,* 875 F.2d 212, 217 (9th Cir. 1989); *Board of Trustees v. Udovch,* 771 F.Supp. 1044, 1047 (N.D. Cal. Sept. 5, 1991); *Board of*

*Trustees v. Atoll Topui*, 2007 WL 174409 (N.D. Cal. Jan. 22, 2007).[3] To determine if a contract provision is enforceable in this setting and not void as a penalty, the court must analyze if 1) "the harm caused by a breach [is] very difficult or impossible to estimate" and 2) "the amount fixed [is] a reasonable forecast of just compensation for the harm caused." *Idaho Plumbers*, 875 F.2d at 217.

### i. Liquidated Damages Provision

First, the harm caused by the breach is difficult to estimate since there are a variety of administrative, accounting, and legal actions that Plaintiffs must perform when late payment occurs. For example, when delayed payment occurs, "the trust must engage in a number of activities, such as sending additional collection letters, billing statements, and correspondence ...that their separate value is most difficult to measure." *Udovch*, 771 F.Supp. at 1049. According to *Udovch*, "[w]hen an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge." *Id.* Thus, the liquidated damages provision satisfies the first factor of the test.

Second, the factor of whether "the amount fixed [is] a reasonable forecast or just compensation for the harm caused" is determined by focusing on the "parties' intentions." *Id*. at 1048. The parties' intentions are determined by looking at "whether, at the time the liquidated damages was written, the drafters made a good faith effort to determine that there would be a rational relationship between the damages that would be paid under the clause and the harms that would be suffered *in most of the situations that were reasonably foreseeable*." *Id.* at 1049 (emphasis in original).

The Court finds that good faith efforts were made in determining a rational relationship between the liquidated damages provision and the harms that could be caused by delinquent contributions. In particular, according to the Master Agreement, parties agreed that liquidated damages will compensate Plaintiffs for "the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions." Hagan Decl., Ex. G (Master

---

[3] Previously, the Court awarded relief under § 1132(g)(2)(E) for paid but paid late contributions. *See Board of Trustees v. Clark Arnold, Corp*, No. 25, slip op. at 9 (N.D. Cal. May 24, 2007). However, the Court is now aware of authority that does not permit awards under § 1132(g)(2)(E) for contributions already paid but paid late.

United States District Court
For the Northern District of California

Agreement § 28A).  There is nothing in the evidence to indicate that this is not an arm's length transaction between two knowledgeable parties who were both acting in good faith.  Thus, the liquidated damages provision satisfies the second factor of this test.  Accordingly, the Court recommends that the District Court grant Plaintiff's request for liquidated damages for the paid/paid late contributions in the amount of $6,300.

Plaintiffs' calculations for liquidated damages seem appropriate as the Court assessed the agreed upon flat fee of $150.00 per month.  The Court has assessed the accounting batch histories to ensure payments were paid but paid late; in addition, the Court has reviewed the calculations and found them to be correct.

          ii.      <u>Interest Provision</u>

Although there is no explicit statement in the Master Agreement regarding the parties' intentions regarding the interest provision, the Court finds that good faith efforts were made in determining the interest rate.  *See King v. Silver Streak Transp., Ltd.,* No. 05-CV-1085, 2007 U.S. Dist. LEXIS 7690 (E.D. N.Y., Feb. 2, 2007) (granting interest to paid but paid late contributions based on contract provisions); *see also Atoll Topui*, 2007 WL 174409 at*9 (granting interest to Plaintiffs for contributions that were delinquent but paid as a matter of contract).  In particular, Shade Construction's failure to make a timely payment injured Plaintiffs.  Interest compensates Plaintiffs for the delay in receiving the contributions.  The rate of 1.5% per month is not uncommon in these contracts and not unreasonable.  Accordingly, the Court finds Plaintiffs' request for interest for the paid/paid late contributions and for liquidated damages is warranted.

Plaintiffs seek $19,193.45 in charges for these late contributions.  Plaintiffs have provided evidence showing that their calculations for interest are appropriate.  *See* Hagan Decl., Ex. K.  Consistent with the Master Agreement, Plaintiffs have only calculated accrued interest between the period in which payment was late until payment was received.  Plaintiffs have not included accrued interest for the late interest payments on the paid/paid late contributions (*i.e.*, no interest on interest).

Plaintiffs have analyzed each month in which payments due were not made and/or where payments were made late.  The month-by-month calculations show that Plaintiffs calculated interest on only the outstanding principal, taking into account partial payments when made.  For example, to

12

1  calculate interest for the late payment from May 2003, Plaintiffs first multiply the total hours

2  worked as reported by the employer (539 hours in May 2003) with the rate for each Trust account as

3  determined by the Master Agreement:

4     For May 2003:

5     [TRUST: Hours x Rate = Total Amount Late for this Trust Account]

6     Vacation-Holiday: 539 x $2.28 = $1,228.92
       Pension: 539 x $2.16 = $1,164.24
7      Health & Welfare: 539 x $3.59 = $1,935.01
       Training: 539 x $0.34 = $183.26
8      Annuity: 539 x $0.71 = $382.71

9  *See id.* The amount that was late for each Trust account was then multiplied by 1.5%, the agreed

10 upon interest rate according to the Master Agreement, and by the number of months the payment

11 was late in order to calculate the total interest for the late payment. *See id.* For May 2003, the

12 payment was due June 25, 2003; however, the payment was finally made on August 11, 2003. *See*

13 *id.* The May 2003 payment was considered late one month as Plaintiffs rounded the delinquency

14 down from 1 ½ months (as it did for every other delinquency). The following are totals for each

15 Trust account for the late payments for the May 2003 period:

16    For May 2003, Interest:

17    [TRUST: Total Amount Late x Rate x # of Months = Interest Due]

18    Vacation-Holiday: $1,228.92 x .015 x 1 = $18.43
      Pension: $1,162.24 x .015 x 1 = $17.46
19    Health & Welfare: $1,935.01 x .015 x 1 = $29.02
      Training: $183.26 x .015 x 1 = $2.74
20    Annuity: $382.71 x .015 x 1 = $5.74

21 *See id.* Late payments occurred for about 35 payments. *See id.* The sum of the interest accrued for

22 each late payment was calculated. *See id.* These calculations were done for each month in which a

23 late payment occurred. The Court has reviewed the calculations for each late payment and found

24 them to be correct.

25    Therefore, Plaintiffs are entitled to $19,193.45 in interest for late payments and $6,300 in

26 liquidated damages, totaling $25,493.45 owed for the contributions paid but paid late.

27

28

   c.  Total Contributions: Reported/Not Paid and Paid/Paid Late

In sum, the Court recommends that the monetary award sought by Plaintiffs be awarded in the amount of $41,531.05 for contributions reported but never paid and $25,493.45 for contributions paid but paid late. *See* Mot. at 12. The $41,531.05 amount consists of $40,327.73 in unpaid contributions, $601.66 in interest through April 25, 2007, and another $601.66 as "double interest." The $25,493.45 amount consists of $19,193.45 in interest (accrued during delinquency) and $6,300 in liquidated damages. *See* Hagan Decl., ¶ 23. Taking both the $41,531.05 for contributions reported but never paid (as of April 25, 2007) and the $25,493.45 for contributions paid but paid late, the total is $67,024.50.

With respect to this sum of $67,024.50, Plaintiffs also ask for interest at the rate of 1.5% per month until the sum is paid. *See* Mot. at 12. The Court does not agree that Plaintiffs are entitled to an interest rate of 1.5% for the entire sum.

   i.  Pre- and Post-Judgment Interest: Unpaid Contributions

With respect to the unpaid contributions, the Court finds that Plaintiffs are entitled to the agreed upon rate of 1.5% per month applied from April 25, 2007 to date of payment. *See* Hagan Decl., Ex. G (Master Agreement). Under the terms of the Master Agreement, "*delinquent contributions* shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment." *Id.* (emphasis added). As of April 25, 2007, the unpaid contributions, standing alone, amount to $40,327.73. *See* Mot. at 12. Until paid (whether pre-judgment or post-judgment), Plaintiffs are entitled to a rate of 1.5% per month for the unpaid contributions (rather than the rate provided by 28 U.S.C. § 1961). *See Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) ("[W]e acknowledge that parties may contract to, and agree upon, a post-judgment interest at a rate other than that specified in § 1961."); *Fidelity. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) ("An exception to § 1961 exists when the parties contractually agree to waive its application."); *Moreno v. Casrik, Inc.*, No. C 05-1250 MJJ (JL), 2006 U.S. Dist. LEXIS 33346, at *18 (N.D. Cal. May 25, 2006) (report and recommendation) (in ERISA case, noting that parties are free to contract for whatever postjudgment interest rate they choose). Plaintiffs are entitled to $41,531.05 (principle and interest accrued to April 25, 2007) plus 1.5% of the unpaid

contribution amount of $40,327.73 (*i.e.*, $604.96 per month) from April 26, 2007 until paid. *See Carriers Container Council, Inc. v. Mobile S.S. Assoc., Inc.*, 948 F.2d 1219, 1226 (11th Cir. 1991) ("holding that the post-judgment interest owed . . . is not subject to § 1132(g)(2)'s doubling provisions").

       ii. Post-Judgment Interest: Paid/Paid Late Contributions

  With regards to the paid/paid late contributions, the Master Agreement provides Plaintiffs are entitled to interest at a monthly rate of 1.5% on delinquent contributions "until receipt of payment." Therefore, 1.5% interest does not accrue once payments, though late, were made. Plaintiffs' own interpretation of the contract is consistent with the Court's conclusion. In asserting damages to date herein, Plaintiffs have only applied the 1.5% interest to the delinquent period in which contributions were due and owing. Plaintiffs have not sought pre-judgment interest on the late charges (consisting of liquidated damages or interest) subsequent to Defendants' payment of the contribution. The Court notes that consistent with the Master Agreement, 29 U.S.C. § 1132(g)(2) only provides for interest on *unpaid* contributions. This section distinguishes "(A) delinquent contributions" from interest or liquidated damages by creating distinct categories for each. *See* 29 U.S.C. § 1132(g)(2)(A)-(E). Interest does not accrue under § 1132(g)(2) for *e.g.* liquidated damages, only on the unpaid contributions.

  However, Plaintiffs are entitled to interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding," under 28 U.S.C. § 1961(a) for post-judgment interest, if any.

   3. Attorney's Fees and Costs

  Finally, Plaintiffs ask to be awarded their fees and costs. *See* 29 U.S.C. § 1132(g)(2) (providing that a court shall award reasonable attorney's fees and costs of the action). *Compare id.* § 1132(g)(1) (providing that a court in its discretion may award fees and costs). Plaintiffs switched counsel in January 2007; thus, there are two requests for attorney fees and costs. The first request involves a total fee award of $2,865.07, which represents 9.6 hours at an hourly rate of $225 and a cost award of $705.07. Plaintiffs extensively detail and outline hours worked and costs. *See* Hagan

15

Decl., Ex. L. The second request involves a total award of $3,425.68, which represents 15.2 hours at an hourly rate of $225 and a cost award of $5.68. *See* Richman Decl. ¶ 5. Both the number of hours worked and the rate appear reasonable. Accordingly, the Court recommends that Plaintiffs be awarded $6,290.75 in fees and costs.

### III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiffs' motion for default judgment against Shade Construction be granted. In light of Plaintiff's Proposed Order for Dismissal of Scott Shade, the Court also recommends that dismissal of Mr. Shade be granted.

With respect to Shade Construction, the Court recommends that Plaintiffs be awarded: (1) $41,531.05 for contributions reported but never paid in full ($40,327.73 in unpaid contributions, $601.66 in interest through April 25, 2007; and another $601.66 as double interest); (2) $25,493.45 for contributions paid but paid late ($19,193.45 in interest and $6,300 in liquidated damages); (3) $5,580 in attorney's fees; and (4) $710.75 in costs. With respect to the $40,327.73 in unpaid contributions, Plaintiffs should further be awarded interest of 1.5% per month ($604.96 per month) -- pre- and post-judgment -- from April 25, 2007 until the delinquent contributions are paid. With respect to the $25,493.45 in interest and liquidated damages for late paid contributions, Plaintiffs are entitled to post-judgment interest of a rate as determined by 28 U.S.C. § 1961 until the delinquent interest and liquidated damages are paid.

Finally, the Court recommends that an injunction be issued in accordance with the terms stated earlier. In particular, Shade Construction should be ordered to: permit a certified public accountant selected by the Board to enter upon its premises during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or report of Shade Construction as may be necessary to determine whether Shade Construction is making full and prompt payment of all sums required to be paid by it to the Funds at issue. In addition, the Court recommends that the presiding judge retain jurisdiction with regard to any contributions and damages determined to be owed to the trust funds after the audit has been completed and the monthly contribution reports provided.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: August 9, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge